# EXHIBIT A



Fish & Richardson P.C.
1717 Main Street
Suite 5000
Dallas, TX 75201

214 747 5070 main
214 747 2091 fax

September 10, 2020

**Via ECF**

The Honorable Chief Judge Rodney Gilstrap
Sam B. Hall, Jr. Federal Building and U.S. Courthouse
100 East Houston St
Marshall, TX 75670

Ricardo J. Bonilla
Principal
rbonilla@fr.com
214 292 4012  direct

Re:   *Smart Lock, LLC v. Alfred International Inc.*
       E.D. Tex. – Marshall Division – Case No. 2:20-cv-156-JRG

Judge Gilstrap,

Pursuant to the Court's Standing Order Regarding Motions Under 35 U.S.C. § 101, the parties hereby submit their positions regarding their disagreement as to the necessity of claim construction to inform the Court's analysis as to patentability.

### I.     Defendant Alfred's position.

This case is a prime candidate for dismissal at the pleading stage because it is apparent from the face of the patent that the asserted claims are directed to ineligible subject matter. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). Such a case should be dismissed even before claim construction when there is no plausible construction that could confer eligibility. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (citing id. at 714–15; *Bancorp Servs. L.L.C v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273–74). Alfred's motion establishes that the asserted claims of the '503 Patent are ineligible on their face, and there exists no plausible claim construction for any claim that would render the asserted claims eligible.

Alfred has made a prima facie case for patent ineligibility, and the burden now shifts to Smart Lock to demonstrate a genuine claim construction dispute that could affect the outcome. *See Jedi Techs., Inc. v. Spark Networks, Inc.*, No. CV 1:16-1055-GMS, 2017 WL 3315279, at *6 (D. Del. Aug. 3, 2017) (finding claim construction was not necessary where the plaintiff failed to identify any specific claims which, if scrutinized during claim construction, would impact the § 101 analysis, and granting motion to dismiss); *see also e.g., Voxathon LLC v. Alpine Elecs. of Am., Inc.*, No. 2:15-cv-562-JRG, 2016 WL 260350 at *4 (E.D. Tex. Jan. 21, 2016) (Gilstrap, C.J.) ("Since the proving of a negative is historically disfavored, once Defendants make a prima facie showing that an inventive concept is absent, it falls upon Voxathon to show that there is, in fact, an inventive concept actually present."). Smart Lock cannot do so. This motion is therefore ripe for consideration and should be granted.

Alfred addressed the irrelevance of any claim construction dispute in its motion. (*See* Mot. at 24-26.) During the meet-and-confer, Smart Lock identified the following terms as needing construction prior to a determination of eligibility: "predetermined access right" (Claim 1), "electronic key device" (Claim 1), "edit and rearrange the plurality of stored access codes" (Claim 1), and "invalidating the first access code" (Claim 11). The Court may construe these claims in the manner most favorable to Smart Lock that is plausibly supported by the record, and that would not alter the ineligibility analysis because these terms claim their recited concepts functionally. As Federal Circuit Judge Chen recently commented, "while not all functional claiming is the same, simply reciting a functional result at the point of novelty poses serious risks under section 101." *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, No. 2018-1763, --- F.3d ---, 2020 WL 4377532 at*7 (Fed. Cir. July 31, 2020) (Chen, J., concurring) (citations omitted*).* The purported point of novelty in the asserted claims is the use of generic computer components, like an electronic key device, to control access to a location, allowing access only to those with a "predetermined access right." The terms noted by Smart Lock functionally claim the abstract idea of controlling access to a location using a locking mechanism, and accordingly, no plausible construction of the terms could affect the ineligibility analysis. Further, even if the asserted claims are directed to a tangible device, they can still be ineligible for patenting. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 210 (Warning "against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art"); *see also Rondevoo Techs., LLC v. Aernos, Inc.*, 2020 U.S. Dist. LEXIS 50653, *10 (D. Del. Mar. 24, 2020) ("Claims may be abstract even when they are directed to physical devices.").

Moreover, the specification supports the generic (and virtually unbounded) nature of these terms. An "access right" is any right of access to a location. *See*, *e.g.*, '503 Patent at 1:50-58 (describing necessity of different access rights for postmen, cleaning companies, firemen, etc.). The "electronic key device" may be "a standard device . . . easily adapted for the use according to the invention," *id.* at 4:25-26, such as "a mobile phone, a PDA . . ., a handheld computer, a smart card, a PSION terminal, a bar code reader, or another terminal that can emit an infrared or radio-based signal or other type of signal," *id.* at 10:35-39. Manipulating the access codes is described as inputting, editing, deleting, or rearranging the valid access codes for a device. *See id.* at 5:40-42, 6:26-27, 11:10-11. And invalidating an access code is described as just replacing one access code with another. *See id.* at 5:9-12. None of these descriptions results in any improved technical device or the unconventional use of a generic device. Accordingly, none of them impacts the ineligibility of the asserted claims.

## II.   Plaintiff Smart Lock's position.

The issue of patentable subject matter requires legal analyses that often "contain underlying factual issues." *Accenture Global Servs., GmgH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013).  Patentability under 35 U.S.C. § 101 is "often inextricably tied to claim construction." *Phoenix Licensing, L.L.C. et al. v. CenturyLink, Inc.*, Case No. 2:14-cv-965-JRG-RSP, 2015 U.S. Dist. LEXIS 134038 at *9, (E.D. Tex. August 14, 2015).  "A definitive ruling on eligibility before claim construction is only warranted in narrow circumstances, making such a ruling the exception rather than the

rule." *Id*. In this case the exception does not apply, as construction of four claim terms is required to property assess the issue of patentability : "predetermined access right" (Claim 1), "electronic key device" (Claim 1), "edit and rearrange the plurality of stored access codes" (Claim 1), and "invalidating the first access code" (Claim 11). These terms require construction as the specification clearly shows that they have a specific meaning as used in the claims which differs from their plain and ordinary meaning. Furthermore, a proper construction of these terms shows that the claims of the '503 Patent are not directed to an abstract idea, but to controlling and managing information stored on an electronic lock.

### "Predetermined Access Right"

The term "Predetermined Access Right" should be construed as "a right to interact with a location bounded by specific attributes." '503 Patent at 3:48-50; 3:56-57. For example, the '503 Patent specification states that access right attributes or properties "could include one or more validity periods, a security level, an identification of related lock control units and/or electronic key devices, a password, a number of times the access right is valid, or any other attribute specifying a property of the access right." *Id*. at 3:57-62. It is therefore not just a right to "access a location" but an access right bounded by specific attributes for a specific location. If this term is construed as Plaintiff suggests, it is clear that the claim is directed to activity that was unconventional at the time of the invention and, for at least this reason, the claim is patent eligible.

### "Electronic Key Device"

The term "Electronic Key Device" requires construction and should be construed as "a mobile device including a display, keypad, and communications port capable of being updated with information on access codes" '503 Patent at 10:25-33 ("invention comprises a mobile electronic key device and a lock control unit…[t]he electronic key device 201 comprises a display 202 for displaying information related to at least one access code, a keypad 203 for inputting commands and for selecting an access code, and a communications port"; *see also Id*. at 9:1-14; *Id*. at 10:45-47 ("It applies in general to all types of electronic key devices that they should be capable of being updated with information on access codes"). As this construction exemplifies, that the claim is directed to physical hardware components and not an abstract idea.

### "Edit and Rearrange the Plurality of Stored Access Codes" and "Invalidating the First Access Code"

The claim term "edit and rearrange the plurality of stored access codes" should be construed as "edit and rearrange, in the memory of the lock control unit, stored access codes." The '503 Patent specification makes clear that the access codes stored on the lock unit itself can be edited by a user transmission. *See id* at 11:8-12 ("an authorized user may enter edit and delete valid access codes and otherwise control the lock unit"); 6:26-27 ("an authorized user may input, edit, or delete access codes stored in the lock unit"). As such, the '503 Patent provides a solution to a technological problem, *i.e.*, editing stored access codes on an electronic lock utilizing a mobile device. Additionally, the claim is also

3

directed to keys on physical lock control units rather than an abstract idea. For at least this reason, the claim is patent eligible.

For the same reasons, the claim term "invalidating the first access code" in claim 11 should be construed as "invalidating, in the memory of the lock control unit, the stored first access code." *See id.* at 12:37-41 ("The access code management system 211 may also automatically, or upon request, invalidate access codes by sending a corresponding control signal *to the lock control unit* 221") (emphasis added). Again, a proper construction of this term in light of the specification shows that the '503 Patent is directed to a key on a physical lock control unit.

Sincerely,

**Ricardo J. Bonilla**
Principal
Counsel for Defendant

**Hao Ni**

Counsel for Plaintiff

4